Bukket/J.
As this is an action against the city for damages, no question as to eminent domain, or appropriation of private property for public uses, is involved in the issue, the controlling issue being as to whether the city, as a municipal corporation, is a riparian proprietor having the right to use the waters of the creek for its own purposes, and to supply them to its inhabitants for the ordinary purposes of life, and as to whether the right to use water from a stream by one riparian proprietor for manufacturing purposes, such as running a grist mill, is inferior or equal to the right to use the water from the same stream by an upper proprietor for domestic purposes.
It is urged by counsel for defendants in error, that a municipality situated on a natural water course, is not in its corporate capacity, a riparian proprietor, and that only those inhabitants whose lots or lands border on the stream are such proprietors, and some cases are cited which seem to take that view of the law.
Other cases are decided upon the theory that such municipality is itself, in its corporate capacity, a riparian proprietor, and entitled as such to riparian rights in the stream upon which it is situated. Barre Water Co. v. Carnes, 65 Vt., 626; Mayor v. Commissioners, 7 Pa. St., 348; Philadelphia v. Collins, 68 Pa. St., 106; Jones on Easements, Sec. 747, and cases cited in a note to the section.
In this state the question remains undecided by this court, and therefore is an open one, and we are at liberty to follow such rule of decision as is supported by sound reason and the weight of authority.
*28 It was held by this court at this term in City of Mansfield v. Balliett, 65 Ohio St., 451, that a city situate on a stream is liable in its corporate capacity to a lower proprietor for polluting the water of such stream by running the sewage of such city and its inhabitants into such stream. This case holds the city in its corporate capacity, and as an upper proprietor, liable to a lower proprietor for polluting the water of the stream; and if the city is liable, not only for its own acts, but also for the acts of its inhabitants, in flowing sewage into the stream, it must be upon the principle that as upper riparian proprietor, it has violated its duty toward a lower riparian proprietor on the same stream, and that therefore the city in its corporate capacity is a riparian proprietor on the stream, and must bear the burdens of.such position.
While the inhabitants own their lots individually, the city owns the streets, the fire department and all other public property and public works, and in its corporate capacity, provides for the convenience and welfare of its inhabitants, as to streets, flue protection, lighting and supplying water, and in such, and other like matters, the city overshadows the individuals, and stands in its corporate capacity as a single proprietor extending throughout its entire limits, and entitled as such to all the rights and subject to all the liabilities of a riparian proprietor on the stream upon which it is situated.
Sound reason, the weight of authority, and the present advanced state of municipal government, rights and liabilities, require that a municipality should be held and regarded, in its entirety, as an individual entity, having in its corporate capacity the *29 rights, and subject to the liabilities, of a riparian proprietor, and we so hold in this case.
The bringing of the action against the city for damages is of itself an implied admission that the city in its corporate capacity, is an upper proprietor, liable for the wrongful diversion or use of the water of the stream upon which it is situated. Being-charged with the liability of such upper proprietor, as conceded by bringing the action and as was rightly held in the Mansfield case, it must also be accorded the rights and benefits of such proprietor.
As such proprietor, the city uses the water of the stream, through its water-works, in extinguishing fires, sprinkling streets, and other public purposes, and supplies water to its inhabitants for domestic use, and manufacturing purposes.
Being an upper riparian proprietor, it follows as a matter of law that it has the right to use out of the stream all the water it needs for its own purposes, returning to the stream all that is not consumed in such use; not however, transporting the water, as was done in Pennsylvania Rd. Co. v. Miller, 112 Pa. St., 34, nor diverting the water as was done in Wheatley v. Chrisman, 24 Pa. St., 298.
The right of an upper proprietor to use the water of a stream for manufacturing purposes, is at least equal to the right of a lower proprietor on the same stream to use the water for a like purpose, and so long as the upper proprietor uses the waters reasonably and returns all the water not consumed in the use, back into the stream, the legal rights of the lower proprietor are not invaded.
There being no right of property in the water of a natural flowing stream, the only right being to the use of the water as it flows by the lands adjoining the *30 stream, it follows that as the water comes first to the upper proprietor, he may use it reasonably for power purposes, returning to the stream all that is not consumed in the use, .and that the right of the lower proprietor attaches only to the use of the water that comes to his premises after passing and so serving the purposes of the upper proprietor.
As the right of the city to supply water to manufactories within its bounds for power purposes is only equal to the right of a lower proprietor to use water for the same purpose, jlie question arises in this case as to the rights of the parties to use the water of the stream for such purposes. The question is a difficult one both in theory and application, as the different sizes of streams, and different circumstances, have caused courts to make different holdings, but the combined result of the cases, seems to be that where there is not sufficient water in a stream to supply fully the needs of all the proprietors on the stream for power purposes, no one has the right to use all the water and thereby deprive those below him from the use of any; nor can those below rightly insist that those above shall use no water for power and thereby save it all for those below. Each should use the water reasonably, and so as to do as little injury to the others as circumstances will permit. As a loss must fall upon one or the other of such^proprietors, neither should be compelled to bear the whole loss, but the water should be so divided and used that each one may bear his reasonable proportion of the loss, and that in case of difference between upper and lower proprietors in such cases the question should be left to the sound judgment of a jury, under proper instructions, to say whether the party complained against has used for power purposes, under all the circumstances, more *31 than his just proportion of the water of the stream. Evans v. Merriweather, 3 Scam. (Ill.), 492.
This being so, the city of Canton, in supplying water to its inhabitants for power purposes, had the right to use the water of the stream to a reasonable extent only, and so as to do as little injury as might be, under all the circumstances, to the lower proprietor, each party bearing an equitable share of the loss caused by the shortage of water. Dry seasons are not caused by either party, but are the act of God, and each party must bear the losses resulting to him therefrom.
From the earliest dawn of history to the present time, the primary use of water has been for domestic purposes, and its secondary use for the purposes of power. People on the upper stream have the right tb quench their thirst, and the thirst of their flocks and herds, even though by so doing the wheels of every mill on the lower stream should stand still. Pennsylvania Rd. Co. v. Miller, 112 Pa. St., 34, 41. And the same right in the use of water as to quenching thirst, extends to all uses for domestic purposes; and the rights of a lower proprietor to the use of the waters of a stream for power purposes, is subject to the superior right of all upper proprietors for domestic purposes, and must yield thereto.
All water powers on a stream are established subject to the superior right of all upperproprietorstouse water out of the stream for domestic purposes, and if the upper proprietors have grown so large, or become so numerous as to consume most, or all of the water, the lower proprietors have no cause of complaint, •because it is only what they should have reasonably expected in t-he growth and development of the country, and subject to which contingency they established their water powers.
*32 In addition to taking water from the stream for its own uses, and supplying the same to its inhabitants for domestic and manufacturing purposes, the amended petition avers that the city supplied water to its inhabitants for commercial purposes. If this means only that the city received pay for the water, so supplied, and thereby made the water an article of commerce, the averment is of no force. The city having the right to supply water to its inhabitants for domestic and manufacturing purposes,. it can make no difference in that right, that the supply is for pay, rather than for nothing. The injury, if any, to the lower proprietor arises from the taking of the water, and not from the pay received therefor.
It is also averred in the amended petition that the city supplies water to people outside of the city, for domestic, commercial and manufacturing purposes. If such supply to outsiders, or to be transported away from the city for commercial purposes, is sufficient in quantity to materially injure defendants in error, taking into consideration the size of the stream and water supply, the city to that extent is exceeding its right as a riparian proprietor.
The general rule is well stated by Paxson, J., in Pennsylvania Rd. Co. v. Miller, 112 Pa. St., 34, 41, as follows: “The principle established by a long line of decisions is that the upper riparian owner has the right to the use of the stream on his land for any legal purpose, provided .he returns it to its channel uncorrupted and without any essential diminution; that in all such cases the size and capacity of the stream is to be considered, and that any interruption of, or interference with, the rights of the lower riparian owner is an injury for which an action will lie, unless too trifling for the law to notice.”
*33 The obligation to return the water to the stream without “any essential diminution” means that the water not consumed in the use, or “legal purpose,” must be returned to the stream, or an opportunity given for it to flow back into the stream by the ordinary channels. It cannot be' lawfully diverted, or transported, so as to prevent it from flowing back into the stream.
The city having no right to materially diminish the flow of the water in the stream to the injury of defend-, ants in error, by supplying water to outsiders, or for commercial purposes to be transported to other parts, or to supply to its inhabitants for power purposes an unreasonable quantity as above pointed out, it follows that if the city has materially diminished thé flow of the water in the stream, by so supplying water to outsiders, or for transportation, or unreasonably for purposes of power, that it is liable to respond in damages to the party injured thereby; but for the water consumed by the city for its own purposes, or so supplied to its inhabitants for domestic use, even though it received pay therefor, it is not liable.
The water taken by the city from the stream for its own use, and so supplied to its inhabitants, is taken by virtue of its rights as a riparian proprietor, and not by virtue of the right of eminent domain, and therefore no compensation need be made therefor.
The general rule that a lower proprietor is entitled to the natural flow of a stream undiminished in quantity, subject to the lawful use of the water by upper proprietors, has been referred to with approval by this court in several cases: Columbus & H. Coal & Iron Co. v. Tucker, 48 Ohio St., 41; City of Mansfield v. Balliett, 65 Ohio St., 451. In the Mansfield *34 case there was no question involved as to the volume or quantity of water, the only question being as to the liability of the city for polluting the waters of the stream, and the right of the lower proprietor to recover damages for such pollution. The case of Columbus & H. Coal & Iron Co. v. Tucker, supra, was also by a lower proprietor against an upper one, for damages for polluting the waters of a stream.
' The question as to the pollution of the waters of a stream in this state seems to be fairly well settled by these two Ohio cases, but they do not determine the relative rights of upper and lower riparian proprietors, as to the use of the waters of a stream, as was' so strongly urged by counsel for defendants in error.
The court'of common pleas erred in its charge to the jury as to the city being an upper riparian proprietor, and as to its right to use water out of the stream for its own purposes, and as to its right to supply water from the stream to its inhabitants for domestic and manufacturing purposes. The real and only question upon which a liability could be founded, viz., whether the flow of the water in the stream was materially diminished, to "the injury of the lower proprietors, by the supplying of water by the city to people outside of its limits, or to be transported away from the city for commercial purposes, or by an unreasonable supply of water for power purposes, seems to Lave been overlooked, and no charge requested or given on that subject.
The circuit court erred in affirming the judgment of the common pleas. Both judgments will be reversed, and the cause remanded for further proceedings.

Judgments reversed.

Spear, Davis and Shauck, JJ., concur.